# Loucheim Brothers' Appeal.
# Reis, Brown & Berger's Appeal.
# Raney's Appeal.
# Weller's Appeal.

1. A number of executions had been issued against Wilson; the plaintiffs agreed to stay for four months, and with other creditors (not being all) agreed to give him time, and "in case of executions issued on any of said claims it is hereby stipulated that the above-named execution-creditors shall have priority whatever the order of their being issued." This meant, that in case of executions being issued on the claims of any of the signers to the agreement, the executions then issued should have priority, but as between the executions issued, in case of insufficiency the fund raised should be distributed *pro ratâ*. The signers were bound in good faith to carry it out.

2. Wilson owed Loucheim $1600, which he stated in the agreement and to the other creditors at $830; and to induce Loucheim to sign, gave him a judgment for $800 as part of the debt, payable in 30 days. This was a fraud on the other signers, and Loucheim's judgment as to them was void.

3. It was not void as to creditors not signing.

4. Loucheim having issued execution on his judgment was trustee *ex maleficio* for the signers, in respect to any advantage obtained by it.

5. McCord, one of the original execution-creditors and a signer, issued execution prematurely after Loucheim; there being no provision for forfeiture in such case, he also was trustee for the other signers.

6. Robinson, not one of the signers, issued execution after McCord; he had no claim to the fund till after the other two were satisfied.

7. Loucheim's acts were not a fraud on Robinson.

8. The fund raised on the executions, was to be distributed amongst the execution-creditors who signed the agreement *pro ratâ*.

9. Wilcocks *v.* Waln, 10 S. & R. 380, Manufacturers' and Mechanics' Bank *v.* Bank of Pennsylvania, 7 W. & S. 335, adopted.

17 P. F. SMITH—4

[Loucheim Brothers' Appeal.]

November 15th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeals from the Court of Common Pleas of *Lawrence county:* No. 216, 217 and 221: Of October and November Term 1870. In the distribution of the proceeds of the sheriff's sale of the personal property of Martin B. Wilson.

Prior to March 22d 1869, executions had been issued against Wilson by Reis, Brown & Berger, Klee & Bro., Whitmore & Co., J. Quigley, L. Raney, McCord & Co. and A. Weller, amounting in the whole to $3297.68. On that day an agreement was made, reciting Wilson's indebtedness under these judgments, and his indebtedness to a number of other creditors, whose names with the indebtedness of each were stated in the agreement. The aggregate amount of these latter debts as stated was $7488.02. Amongst other creditors named were Loucheim Bros., whose claim was stated to be $830. The agreement further recited that Wilson could not go on without an extension, and it was believed by an extension that he would pay all, and be able to prevent a sacrifice of his property. The agreement stipulated that "The above-named execution-creditors stay their judgments for four months from this date, and all the other above-named creditors do hereby agree to accept in satisfaction of their several claims the judgment bond of the said Wilson to S. W. Dana, trustee for their use respectively for the amount of their respective claims, payable one-half in six months from this date, and the other half in eight months from date, with interest from this date. It shall be stipulated in said bond that in case of default in paying either instalment at the day the same falls due, or in case of the non-payment of the aforesaid execution-creditors at the expiration of their stay aforesaid, then in either case the whole amount of said bond shall be and become due and payable, and execution may immediately issue therefor with attorney's commission for the collection thereof. In case of executions issued on any of said claims, it is hereby stipulated that the above-named execution-creditors shall have priority, whatever the order of their being issued. This agreement not to be binding upon any signer thereto until subscribed by all and every of the aforesaid creditors."

The list given in the agreement was said by Wilson to contain all his creditors and the amount of their indebtedness correctly. It appeared, however, that the firm of Robinson & Co., whom he did not name at all, were amongst his creditors. It also appeared that his indebtedness to Loucheim Brothers was $1600, instead of $830, as stated in the list. Robinson & Co. were never asked to sign the agreement. When Loucheim Brothers were asked by Wilson to sign it, they refused unless part of their indebtedness were first paid; Wilson having declined, they finally agreed to sign upon Wilson giving them a judgment bond for $800, payable in

thirty days; he gave the bond; they then signed the agreement to give time on $830, the amount stated in the agreement, being the remainder due to them. The $800 judgment being unpaid at maturity, Loucheim Brothers issued execution on it on the 13th of May 1869. On the 23d of June, McCord & Co., execution-creditors at the date of the agreement and signers of it, issued execution for $371.88. Robinson & Co., on the 7th of July, issued execution on their claim for $2953.02; after which there were sixteen executions issued, the last being on the bond given to Dana as trustee for $7863.02; this execution, with eight others of those who signed the agreement, was issued July 23d, the day after the four months' stay stipulated for had expired. The money for distribution was made under these executions; it amounted, after various deductions and the costs of audit, to $3091.81. M. B. Welch, Esq., was appointed auditor to report distribution.

He reported to Loucheim Brothers $570, the amount due them beyond the $830 mentioned in the agreement, being of opinion, that as to that sum they were excluded by their breach of the agreement in issuing execution prematurely; for the same reason he excluded McCord & Co. altogether and awarded the balance of the fund to Robinson & Co. as the next execution-creditors.

Upon exceptions filed by all the creditors, the court was of opinion that Loucheim Brothers had acted in bad faith and in fraud of their agreement made with Wilson, and that after the issuing of their execution prematurely, McCord & Co. were relieved from any obligation under the agreement not to issue execution. It was therefore decreed, that Loucheim Brothers should be altogether excluded from the distribution; that the execution of McCord & Co. should be first satisfied, and the balance of the fund appropriated to Robinson & Co.

From this decree Loucheim Brothers, Reis, Brown & Berger, L. Raney and A. Weller appealed.

*J. McMichael*, for Loucheim Brothers, cited 2 Parsons on Contracts 771.

*D. B. & E. T. Kurtz*, for Reis, Brown & Berger, cited Graff v. Pittsburg and S. Railroad, 7 Casey 489; Edinboro' Academy v. Robinson, 1 Wright 210; Gibson v. Bellas, 2 Phila. R. 390.

*D. S. Morris*, for Raney and Weller.

*J. A. Lowrie*, for McCord & Co.

*H. Burgwin*, for Robinson & Co.

The opinion of the court was delivered, January 5th 1871, by SHARSWOOD, J.—These are appeals from a decree of the court

below distributing the proceeds of the personal property of M. B. Wilson raised upon executions against him.

It appears that Wilson having become involved, and eight writs of fieri facias against him being in the hands of the sheriff, on the 22d of March 1869 procured his creditors, as well his general creditors as those who held executions, to execute an agreement by which the execution-creditors agreed to stay proceedings for four months, and the general creditors agreed to accept the judgment-bond of said Wilson to S. W. Dana, trustee for their use respectively, for the amount of their claims at six and eight months. It was stipulated as a term or condition of the arrangement that in case of executions issued on any of said claims the execution-creditors should have priority whatever the order of their being issued. It will be best to state now, in passing, that the plain meaning of the parties to the agreement was that in the event of executions issued upon the claims of any of the signers, those creditors who already had executions in the hands of the sheriff should have priority over all the others, but as between themselves without regard to the order in which their executions were issued. In other words, if the property should be insufficient to pay all, it should be distributed amongst them *pro ratâ* in proportion to their respective amounts. No other interpretation can be reasonably placed upon the language employed; and it cannot be doubted that all the signers of that agreement were bound in good faith to carry it out.

Loucheim Brothers were general creditors and signed the agreement. They were returned by Wilson in the list exhibited to his creditors as entitled to $830. In point of fact his debt to them was $1600. To induce them to sign the agreement, he executed to them a judgment-bond for $800, payable in thirty days. It cannot be doubted, both upon principle and the authorities cited by the learned judge below, that this was a legal fraud upon the other signers, and the security as to them was void. But it was not void as to other creditors not parties to that agreement. If by means of that security Loucheim Brothers obtained any legal advantage over others, they must be regarded in equity as trustees *ex maleficio* for the signers of the agreement, and according to its terms Loucheim Brothers having entered up this judgment and issued execution and thereby acquired the first lien, hold that lien as trustees for those entitled under the provisions of the agreement to which they were parties. It seems useless to elaborate an argument in support of a position which is so plain a dictate of common justice.

The next execution in order is that of McCord & Co. They were also signers of the agreement. No provision is made in the agreement that the claim of a creditor should be forfeited in consequence of having issued execution before the period of the stay

was out.   Their execution, like the first of Loucheim Brothers, is therefore in trust for the execution-creditors according to the terms of that agreement.

The next execution-creditors are Robinson & Co.   They were not signers of the agreement, and of course are unaffected by any of its provisions.   But as their executions are subsequent to those of Loucheim Brothers and McCord & Co., they have no claim, legal or equitable, to any part of the fund except what shall remain after satisfying these two first executions.   The fraud of Loucheim Brothers was no fraud upon them, and they have no right to any advantage from it.   McCord & Co. are not trustees for them.   It seems very plain, then, that so much of the fund as is necessary to satisfy the debt and interest upon those prior executions is in equity to be distributed to and among the eight execution-creditors who signed the agreement of March 22d 1869 *pro ratâ* in proportion to their respective claims.   The costs upon those executions are to be paid to the plaintiffs in the writs, or those otherwise entitled thereto.

In The Manufacturers' and Mechanics' Bank *v.* The Bank of Pennsylvania, 7 W. & S. 335, a case which arose upon an issue directed to try the right to the proceeds of real estate sold under execution, it was held that, although a mortgage imperfectly recorded is ineffectual as a lien against subsequent judgment-creditors, yet if there be a second mortgage between the first and the judgments in point of time, entitled to the proceeds, and this mortgagee had actual notice of the first mortgage when he took his own, the first mortgage is good as to him, and therefore entitled to have the money appropriated to it or so much thereof as is necessary to satisfy his claim.   The creditors subsequent to the second mortgage could not come in till it was satisfied, and it cannot be until the first mortgage is.   This was upon the principle previously settled in Wilcocks *v.* Waln, 10 S. & R. 380.   There an insolvent was indebted to A. on a judgment, and to B. on a mortgage subsequent in date to the judgment, and to the United States on judgments for duties.   By the Act of Congress, the United States had a priority over the judgments, but not over the mortgage.   As against the United States, B. was entitled to the money; but A., though having no right as against the United States, had a prior right as against B., and was therefore held entitled to the fund.   The principle settled in these determinations appears to us to rule this case.

> Decree reversed, and record remitted to the court below that a decree may be there entered in conformity with this opinion.