# Ferbro Trading Corporation v. Jo-Mar Dress Corporation et al.

Before Eagen and Robinson, JJ.

*Jerome E. Parker,* for chattel mortgagee.

*Eugene Nogi,* for landlord.

*Henry Greenwald,* for Pennsylvania Department of Labor and Industry.

*Joseph P. Brennan,* for United States of America.

*Joseph Marzzacco,* for Pennsylvania Department of Revenue.

ROBINSON, J., May 11, 1951.—The legal questions here involved arise out of a controversy between rival lien claimants to the proceeds of a sheriff sale of personal property of defendant, Jo-Mar Dress Corporation.

On September 26, 1950, plaintiff herein entered judgment against defendant on a confession contained in a bond secured by a chattel mortgage and caused execu-

tion to issue. The sheriff on October 17, 1950, sold the goods, chattels and machinery of defendant from which, after deduction of the sheriff's costs, a fund of $6,943 was realized. Claims to this fund in the hands of the sheriff were presented by defendant's landlord, plaintiff as chattel mortgagee, the Commonwealth of Pennsylvania, and the United States.

The sheriff was permitted, on petition, to pay the money into court and the fund is before us for distribution under the Act of June 28, 1871, P. L. 1376, sec. 1, 12 PS §2671. The facts have been established by stipulation agreed to by all claimants involved.

The events pertinent to the issues are that on January 1, 1950, the landlord, B. S. Gruber, leased a factory premises in the City of Scranton to defendant Jo-Mar Dress Corporation for a term of 16 months at a monthly rental of $250, and defendant went into possession of the same. Defendant, on February 23, 1950, executed and delivered to plaintiff, Ferbro Trading Corporation, a bond and chattel mortgage on the factory machinery securing a loan of $4,000 which was recorded the same day in the office of the Prothonotary of Lackawanna County in Chattel Mortgage Book 5, page 272.

The Commonwealth of Pennsylvania, Department of Labor and Industry, Unemployment Compensation Fund, on June 8, 1950, filed its lien for unpaid unemployment compensation contributions against defendant in the sum of $1,818.30, representing principal contributions and interest due and owing by defendant. Interest is claimed on the recorded lien from May 31, 1950.

On July 12, 1950, the Collector of Internal Revenue filed notices of liens with the prothonotary, totaling $1,994.47 for unpaid Social Security taxes and employes' income tax withheld by defendant and filed, on July 18, 1950, a notice of lien in the sum of $226.60

representing unpaid Federal unemployment taxes due from defendant. The assessment lists, containing the three items for which the lien notices were filed, had been received by the collector in the months of April and May.

Defendant being in arrears in the payment of rent, the landlord on September 6, 1950, issued his warrant of distress, levy was made and the sale was scheduled for September 27, 1950. In the meantime, September 26th, plaintiff entered judgment against defendant on the chattel mortgage bond and issued execution. The sheriff sold the goods and machinery of defendant for $7,000 on October 17, 1950, and the same day, the Collector of Internal Revenue filed additional notices of liens amounting to $4,388.34 for items of Social Security and Federal unemployment taxes for which he had received assessment lists on September 15th and 28th, respectively.

The landlord claims the balance of rent provided by the terms of his lease agreement, but actually defendant owed $750, three months' rent, at the time of the distraint, and the expenses which amounted to $50. On October 18, 1950, the landlord leased the factory premises to others for a term ending April 1, 1952, at a $275 per month rental.

Plaintiff's claim under the chattel mortgage is for $3,196.78, plus an attorney's commission of $319, allowed by the terms of the instrument, and $19.65 costs.

The Commonwealth also claims a capital stock tax of $42.74 settled against defendant July 18, 1950, but for which no lien was filed with the prothonotary.

The competing lien claims of the landlord, the chattel mortgagee, the Commonwealth and the Government require adjudication in terms of the respective priorities which are established by the law, by the fact of prior recordation in time and those arising by the exercise of the power of sovereignty.

The landlord's right is of ancient origin. At the common law he was given the right to distrain for rent in arrears which enabled him to levy upon all the goods and chattels upon the premises whether owned by the tenant or not. Certain goods, belonging to others than the tenant, are excepted from a landlord's levy by statute. See Harrop v. Lutz, 53 Pa. Superior Ct. 195; Reinhart v. Gerhardt, 152 Pa. Superior Ct. 229. The common-law right of the landlord to distrain for rent in arrears was redeclared by statute: Act of March 21, 1772, 1 Sm. L. 370, sec. 14, 68 PS §251. If the goods are on the leased premises they are subject to the landlord's distress when the tenant is in arrears in rent and it is immaterial that they are held by the tenant under a bailment lease, conditional sale or subject to a chattel mortgage. In Commercial Credit Plan v. Mahoney et al., 67 D. & C. 577, it was held that a landlord's distraint for unpaid rent is entitled to a priority over the claim of a chattel mortgagee under the Act of June 1, 1945, P. L. 1358, 21 PS §940.1 even though the levy of the distraint was made subsequent to the recording of the chattel mortgage. The opinion writer, Judge Evans, rightfully pointed out that the landlord's "right originates when the goods are placed on the premises".

The Act of May 7, 1929, P. L. 1589, sec. 1, as amended by the Act of June 22, 1931, P. L. 889, 68 PS §322, provides:

"Whenever any sheriff shall, pursuant to an execution issued, levy upon any goods and chattels upon which there is at the time a distress for rent, . . . any sale, pursuant to such levy or distress . . . shall be stayed pending the sale of such goods and chattels by the sheriff, . . . and, in such cases, the claim for rent, together with costs of executing such landlord's warrant, may be filed with the sheriff, . . . and shall be a lien on the proceeds of the sale of such personal prop-

erty, and be paid first out of the proceeds of such sale."

Here the landlord distrained for the balance of the rent, $2,300, due under the terms of the lease agreement. On October 18, 1950, the day after the sheriff sale, he leased the premises to another at a higher rental-than that provided for in the lease with Jo-Mar Dress Corporation. The landlord's actual loss because of the breach of the lease agreement by the defendant was $800, namely, three months' rent at $250 per month plus $50, the expenses of the distraint. When he relet the premises to a third party his recovery was one for damages for breach of the lease agreement rather than a recovery for rent: Grakelow v. Kidder, 95 Pa. Superior Ct. 250. The fund produced by the sheriff's sale must be distributed according to principles of law and equity (Landell's Appeal, 105 Pa. 152), and it would be inequitable to permit the landlord to recover rent for the balance of the term of the lease with defendant when he has let the premises to others on more advantageous terms: Grakelow v. Kidder, supra. The landlord's claim here is limited to the amount of his loss, $800.

Plaintiff's claim is founded upon a chattel mortgage given it by defendant covering the personal property sold by the sheriff. The Chattel Mortgage Act of June 1, 1945, P. L. 1358, 21 PS §940, introduced an innovation into the law of Pennsylvania where prior settled public policy caused the law to frown upon the mortgaging of chattels and, as such a statute, it can be construed to change the policy of the law only to the extent of its express provisions: First National Bank of Jamestown v. Sheldon, 161 Pa. Superior Ct. 265. Nevertheless, section 1 ( 21 PS §940.1) of the statute permits a bond of indebtedness to be secured by the giving of a mortgage on goods and chattels and section 5 (21 PS §940.5) provides, in part, that: "Any chattel mortgage

executed pursuant to this act shall be a lien upon the property therein described, which lien shall be good and valid against and superior to all rights of subsequent purchasers, subsequent mortgagees and other subsequent lienors and encumbrancers, and all persons subsequently dealing with the mortgaged property or subsequently acquiring an interest therein from the time of filing of the mortgage."

It is clear that by the express provisions of the statute plaintiff got a lien on the chattels of defendant, described in the mortgage, when the instrument was filed. This lien was the first of those here involved to be filed of record in point of time and is subject only to the superior claim of the landlord for arrearages in rent unless the subsequent liens of the Commonwealth or Federal Government take a priority by the exercise of a power of sovereignty. The sheriff sale, creating the fund to be distributed, was held in pursuance of the execution issued on the judgment entered on a confession in the bond accompanying the chattel mortgage, and plaintiff's lien in respect to priority dates as of February 23, 1950, the time when the mortgage was recorded.

The amount due on plaintiff's chattel mortgage on the date of the sale was $3,535.43, including an attorney's commission and costs. When the terms of an instrument authorize a collection fee it may be added to the secured debt and collected as part thereof. Attorneys' commissions, so authorized, are computed on the amount of the debt actually due. See Anderson v. Best, 176 Pa. 498; United States v. Sampsell et al., 153 F.(2d) 731. They are postponed or preferred as the principal debt is postponed or preferred.

The Commonwealth's claim is made by the Department of Labor and Industry for the use of the Unemployment Compensation Fund. It is for unpaid con-

tributions, interest and penalties due and owing by defendant, as employer, under the provisions of the Pennsylvania Unemployment Compensation Law. The lien, filed with the prothonotary on June 8, 1950, was prior in time to all record liens here involved except that of the chattel mortgage. It was entered for $1,-818.30 with interest from May 31, 1950. The Commonwealth claims priority in time against the liens of the United States and priority by sovereignty as against the landlord's distraint and the chattel mortgage. The Commonwealth cannot claim priority by sovereignty against the United States: Littlestown National Bank v. Penn Tile Works Company, 352 Pa. 238.

The Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, sec. 308.1, as amended, 43 PS §788.1, provides that:

"All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this Act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, that the lien hereby created shall not be prior to pre-existing duly recorded real estate mortgages. . . ."

The Fiscal Code of April 9, 1929, P. L. 343, sec. 1401, as amended, 72 PS §1401, provides as to the lien of a State tax and the collection thereof:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may

hereafter be enacted, and unpaid bonus, penalties, and all public accounts settled against any corporation, association, or person, including interest thereupon, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person. . . ."

The Commonwealth's position is that contributions under the Unemployment Compensation Act payable by an employer become a lien on the real and personal property of the employer from the time they are entered of record and the claims thus entered of record are collectible out of the fund created by the judicial sale of the employer's property in the same manner that State taxes are first allowed out of the proceeds of a judicial sale under section 1401 of the Fiscal Code.

Thus the State, by its power of sovereignty, has created a priority in the proceeds of a judicial sale of a delinquent taxpayer's property over all other liens, whether prior in time or not, that it may constitutionally supersede. This priority, of course, may not prevail against the sovereignty of the United States without the express consent of Congress.

It is perfectly clear that, because of the priority created by the sovereign power of the Commonwealth, the lien for unpaid employer's unemployment compensation contributions is entitled to preference over the landlord's claim for rent and plaintiff's prior recorded chattel mortgage: Potter Title & Trust Co. v. International Penn Colleries Co., 68 D. & C. 591; Blue Ball National Bank v. Diller et ux., 53 D. & C. 445. The case

of Reconstruction Finance Corp. v. Fallston Co., 53 D. & C. 226 is not in conflict with these authorities as the decision there turned on the failure of the Commonwealth to file its claim as required by the statute prior to the sale.

While the Commonwealth is claiming, from the fund, the sum of $2,817.74, the amount of the lien entered with the prothonotary was for $1,818.30 with interest claimed from May 31, 1950. Section 308.1 of the Act of 1936 provides that the lien for unpaid contributions, interest and penalties arises only after it is entered of record and "thus entered of record shall first be allowed and paid out of the proceeds" of a judicial sale. This provision is conclusive as to the amount of the Commonwealth's claim. The Commonwealth is entitled to $1,818.30, with interest from May 31, 1950, as its claim can rise no higher than the amount entered of record. It is entitled to interest only to the date of the sheriff sale.

The claim of the United States to the fund is founded upon liens, notices of which were filed against defendant for unpaid contributions under the Federal Insurance Contribution Act,[1] the Federal Unemployment Contribution Tax Act,[2] and the withholding taxes payable by defendant under the Internal Revenue Act. They total $6,447.27. The lien notices of the United States were not filed in the prothonotary's office until July and October 1950. The Collector of Internal Revenue received the assessment lists for the taxes payable by defendant in April, May and September 1950, but no lien notice was filed by the United States until after the lien of the Commonwealth was entered in the prothonotary's office. In point of time, the Government's lien notices were subsequent to the lease, to the

---

[1] Social Security and old age pension.
[2] Social Security unemployment benefits.

filing of the chattel mortgage and the liens entered by the Commonwealth.

Sections 3670 and 3671 of the Internal Revenue Code of Feb. 10, 1939, 53 Stat. at L. 448, 26 U. S. C. §§3670, 3671, provide that, upon failure to pay taxes owing to the Government, the amount due shall be a lien upon any property, real or personal, of the delinquent taxpayer in favor of the United States, which lien shall arise at the time that the assessment list is received by the Collector of Internal Revenue and continue until the liability has been satisfied or becomes unenforcible. Section 3672 provides that such lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the collector under applicable State laws.

Thus, Congress has by this legislation refrained from exercising its sovereign power to give to its liens priority over all others. Insofar as mortgagees, pledgees, purchasers or judgment creditors have perfected lien interests in the property of a delinquent taxpayer, Congress is content to rest upon the settled principle governing priority of liens, namely, that the first in time is the first in right. If the Commonwealth's lien is of such standing as to give it the status of a judgment creditor under the provisions of section 3672 of the Internal Revenue Code, it is to prevail because its lien is first in time: Littlestown National Bank v. Penn Tile Works Company, 352 Pa. 238; cf. Michigan et al. v. United States, 317 U. S. 338. In Meyer Estate, 159 Pa. Superior Ct. 296, the Superior Court said:

"It (Congress) may say that the first in lien is the first in right and further that the government may lose its priority by failure to give notice of its claim."

The Government contends, however, that the lien of the Commonwealth for unpaid unemployment contributions is but an inchoate lien to which the lien of the United States is superior. It argues, that, under

section 3672 of the Internal Revenue Code, its lien is invalid only as against a prior mortgagee, pledgee, purchaser or judgment creditor and the Commonwealth here is not a judgment creditor within the meaning of the statute. The proposition of this contention has been decided against the Government. In United States v. Industrial Commission of State of Wisconsin (Re Northwest Wood Products Co.) 168 F. (2d) 639 (CCA, 1948), the controversy centered about rival tax liens of the United States and liens of the State of Wisconsin for delinquent unemployment compensation taxes. The liens of the State were filed under applicable local law before the lien notices of the United States. It was there held that Wisconsin's claim for unemployment compensation taxes, filed under a system similar to that provided for in section 308.1 of the Pennsylvania Unemployment Compensation Law, while, not in form, was in effect a judgment conferring upon the State the status of a judgment creditor in the purview of section 3672 of the Internal Revenue Code. The issue of priority was decided in favor of the State whose liens antedated those of the government.

In United States v. Sampsell et al., 153 F. (2d) 731, the Circuit Court of Appeals for the Ninth Circuit held that liens of the United States for unpaid gasoline taxes were not entitled to priority in payment over general liens of the State for franchise taxes where the State's liens were filed before those of the Government. Cf. United States v. City of Greenville et al., 118 F. (2d) 963.

We do not consider the decision in United States v. Security Trust and Savings Bank et al., 340 U. S. 47, as authority that the lien of the Commonwealth is inchoate in nature. There, it was held that an attachment of a debtor's property before suit, according to

California practice, could not prevail over Federal tax liens, notice of which had been filed under section 3672 of the Internal Revenue Code subsequent to the attachment. The court characterized the attachment as "merely a lis pendens notice that a right to perfect a lien exists." The perfection of the lien there was contingent upon the outcome of the suit.

Commonwealth v. Lombardo, 356 Pa. 597, does not hold that the Pennsylvania lien for unpaid unemployment contributions is merely inchoate. It decided that the lien on personal property of the delinquent is not self-executing and may be cut off by a transfer to an innocent purchaser who is not charged with constructive notice thereof by the filing of the same in the prothonotary's office.

Section 308.1 of the Pennsylvania Unemployment Compensation Law when rightly understood provides for the creation of a lien on the property of an employer liable for unpaid contributions when entered of record in the office of the prothonotary. It also furnishes methods by which the unpaid contributions secured by the lien may be collected. The statute provides that the unpaid contributions entered as a lien shall first be paid out of the proceeds of a judicial sale of the delinquent employer's property and also permits the lien to be prosecuted by a writ of scire facias to judgment and execution "in the same manner as such writs are ordinarily employed".

The use of a writ of scire facias to forclose a lien is traditional Pennsylvania procedure and the only method the legislature could prescribe, as article 3, sec. 7, of the Pennsylvania Constitution prohibits the passage of special or local laws, "changing methods for the collection of debts, or the enforcing of judgments". There would be no more reason to hold the lien of the Commonwealth imperfect because it is enforced by a

writ of scire facias than to hold the lien of a first mortgage on real estate inchoate, because in Pennsylvania, it is foreclosed by the employment of the very same writ. We are of the opinion that the lien created by section 308.1 is a completed and perfected charge on the delinquent's property, and when prior in time is prior in right to the liens of the United States under section 3672 of the Internal Revenue Code.

We conclude at this point that the respective priorities to be accorded the rival claims here competing for payment out of the fund realized from the sheriff sale must rank as follows: (1) The liens of the Commonwealth as recorded, for unpaid unemployment contributions, with interest for 4 months and 17 days, (2) the claim of the landlord for loss of three months' rent and the expense of distress, (3) the lien of the chattel mortgage securing unpaid principal, interest, attorney's commission and costs, and (4) the balance to the United States.

There remains one matter to be disposed of, one which may well bring delight to the academician. It concerns the capital stock tax for $42.74 settled by the Department of Revenue upon the shares of defendant corporation on July 18, 1950. The Act of April 9, 1929, P. L. 343, sec. 805(a) as amended, 72 PS §805(a) provides that:

"The amount of every settlement of tax upon the shares of capital stock of . . . every company . . . shall become due and payable sixty (60) days after the date of settlement."

This tax became payable on September 18, 1950, and under section 1401 of the Fiscal Code of the Commonwealth became a first lien on the property of defendant corporation and entitled to be "first paid out of the proceeds of" a judicial sale. No lien was recorded, however, and the tax was settled after the liens of the landlord were perfected.

The lien situation viewed in respect to this tax is that the landlord is entitled before the chattel mortgage, the chattel mortgage is ahead of the liens of the United States, which in turn come before the Commonwealth's claim for the capital stock tax. Yet by the provisions of section 1401 of the Fiscal Code the Commonwealth by the exercise of its sovereignty places this tax lien ahead of the landlord's claim and the lien of the chattel mortgage. Thus there is a circuity of lien.

In Loucheim Brothers' Appeal, 67 Pa. 49, 53, Justice Sharswood writing for the court, outlined the methods employed in this jurisdiction to solve the anomalies arising when the priorities accorded competing claims became circuitous:

"In the Manufacturers' and Mechanics' Bank v. The Bank of Pennsylvania, 7 W. & S. 335, a case which arose upon an issue directed to try the right to the proceeds of real estate sold under execution, it was held that, although a mortgage imperfectly recorded is ineffectual as a lien against subsequent judgment-creditors, yet if there be a second mortgage between the first and the judgments in point of time, entitled to the proceeds, and this mortgagee had actual notice of the first mortgage when he took his own, the first mortgage is good as to him, and therefore entitled to have the money appropriated to it or so much thereof as is necessary to satisfy his claim. The creditors subsequent to the second mortgage could not come in till it was satisfied, and it cannot be until the first mortgage is. This was upon the principle previously settled in Wilcocks v. Waln, 10 S. & R. 380. There an insolvent was indebted to A. on a judgment, and to B. on a mortgage subsequent in date to the judgment, and to the United States on judgments for duties. By the Act of Congress, the United States had a priority over the judgments, but not over the mortgage. As against the

United States, B. was entitled to the money; but A., though having no right as against the United States, had a prior right as against B., and was therefore held entitled to the fund."

See also Thomas' Appeal, 69 Pa. 120; Miller's Appeal, 122 Pa. 95; Phillips' Estate (No. 4), 205 Pa. 525. For application of the methods applied in other jurisdictions, cf. Hoag v. Sayre et al., 33 N. J. Eq. 552; Day v. Munson et al., 14 Ohio 488; Dyson v. Simmons, 48 Md. 207.

It is clear that the Commonwealth cannot assert its lien for the capital stock tax as against the liens of the United States because it was not settled until after the Collector of Internal Revenue filed lien notices with the prothonotary and the State lien was not recorded. The Commonwealth may not assert its soverignty against that of the United States and therefore the balance of the fund here to be awarded to the United States cannot be affected. But the State may, in asserting its sovereignty, give its claim priority over those of the landlord and chattel mortgagee. As between the landlord and the chattel mortgagee, the former is to be preferred. We are of the opinion that the amount of the lien of the capital stock tax must be deducted from the chattel mortgagee's claim of $3,535.43 and awarded to the Commonwealth.

Now, May 11, 1951, it is ordered and decreed that the fund paid into court shall be distributed by the Prothonotary of Lackawanna County in the following payments:

| | |
|---|---|
| To B. S. Gruber, landlord | $ 800.00 |
| To Ferbro Trading Corp., chattel mortgagee | $3,492.69 |
| To Commonwealth of Pennsylvania (Unemployment Compensation Funds) | $1,859.82 |
| To Commonwealth of Pennsylvania (capital stock tax) | $ 42.74 |
| To the United States of America | $ 747.75 |